UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY DOSS, | Case No. CV 04-5321-RC |
| Plaintiff, | |
| vs. | OPINION AND ORDER |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff Jerry Doss filed a complaint on July 19, 2004, seeking review of the Commissioner's decision denying his application for disability benefits. The Commissioner answered the complaint on December 13, 2004, and the parties filed a joint stipulation on March 30, 2005.

**BACKGROUND**

**I**

On July 12, 1996, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, claiming an inability to work since December 9, 1995, due to lower back limited mobility and hip and leg pain. Certified Administrative

Record ("A.R.") 20-22, 39, 321. The plaintiff's application was initially denied on October 1, 1996, and was again denied on November 16, 1996, following reconsideration. A.R. 29-38, 286-95. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge F. Keith Varni ("ALJ") on July 14, 1997. A.R. 78-101, 271-80, 284-85. On September 9, 1997, the ALJ issued a decision finding plaintiff is not disabled. A.R. 9-16. The plaintiff appealed this decision to the Appeals Council, which denied review on February 11, 1999. A.R. 3-8, 263-64, 271-72.

On April 13, 1999, plaintiff filed his first federal complaint, Doss v. Apfel, case no. CV 99-3917-RC ("Doss I"), and judgment was entered on November 16, 1999, pursuant to the parties' stipulation, remanding Doss I to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). A.R. 234-36. On June 12, 2000, Administrative Law Judge Cynthia A. Minter ("ALJ Minter") conducted another administrative hearing, A.R. 238, and on December 10, 2000, ALJ Minter issued a decision finding plaintiff is not disabled. A.R. 223-33. The plaintiff appealed this decision to the Appeals Council, which denied review on April 16, 2001. A.R. 209-16, 221-22.

On May 8, 2001, plaintiff filed his second federal complaint, Doss v. Massanari, CV 01-4202-RC ("Doss II"), and judgment was entered on October 22, 2001, again pursuant to the parties' stipulation, remanding Doss II to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). A.R. 397-400. On April 12, 2004, ALJ Varni conducted another administrative hearing, A.R. 377-96,

and on April 27, 2004, he issued a decision again finding plaintiff is not disabled.  A.R. 360-68.

**II**

The plaintiff, who was born on December 7, 1951, is currently 53 years old.  A.R. 20, 83, 240-41.  He has a twelfth grade education and attended community college for two years.  A.R. 43, 84-85, 241, 325.  The plaintiff has previously worked as a counselor, truck driver, and sheet metal mechanic.  A.R. 43, 53-58, 84-86, 241-42, 309-14, 325, 406.

On December 9, 1995, plaintiff was injured in a motor vehicle accident when the vehicle he was driving was rear-ended.  A.R. 86, 122, 150, 176.  That same day, Marion L. Smith, M.D., examined plaintiff and diagnosed him with a cervical spine strain, and limited him to lifting no more than 10 pounds.  A.R. 109-09A.  On December 20, 1995, plaintiff was released to return to work at modified duties, with no climbing stairs or ladders, no overhead work, and no pushing, pulling and/or lifting of over 10 pounds, and limited standing, walking, stooping and bending.  A.R. 103.

On December 21, 1995, Hiromu Shoji, M.D., examined plaintiff and diagnosed him with a cervical strain and a lumbar spine strain associated with degenerative disc disease at L5-S1.  A.R. 110-32.  Cervical spine x-rays were normal, while lumbar spine x-rays revealed decreased disc space at L5-S1 and some degenerative changes at the lowest level of the facet joints.  A.R. 129-30.  The plaintiff was started on a course of physical therapy, and placed on modified duties

consisting of "sit-down work with the ability to stand and walk as tolerated at this time." A.R. 130. Dr. Shoji reevaluated plaintiff on January 4, 1996, noting plaintiff's condition had "markedly improved" with physical therapy. A.R. 114-17. However, from January 10 through January 25, 1996, plaintiff was placed on bed rest after he complained of a spontaneous flare up of his back pain. A.R. 113, 119-21. On January 23, 1996, Dr. Shoji diagnosed plaintiff with a herniated lumbar disc at L4-L5 and a cervical strain, continued his disability status through February 5, 1996, and recommended a lumbar discectomy at L4-L5 and possibly at L5-S1. A.R. 110-12, 118.

On February 7, 1996, David L. Wood, M.D., examined plaintiff and diagnosed him with cervical and lumbar spine strain/sprain, A.R. 149-60, and recommended plaintiff undergo physical therapy. A.R. 157. X-rays of the cervical and thoracic spine were normal, while lumbar spine x-rays showed some narrowing at L5-S1 with loss of the normal lumbar lordosis. A.R. 156. On June 11, 1996, Dr. Wood performed an L4-L5 discectomy on plaintiff and removed a large extruded disc fragment. A.R. 142, 177. On September 9, 1996, Dr. Wood concluded plaintiff was permanent and stationary, with work restrictions of no heavy lifting, repeated bending and stooping, or prolonged walking.[1] A.R. 134-41. Dr. Wood opined plaintiff "appears to be doing extremely well at this point, even though he does continue to offer a lot of

---

[1] In assessing plaintiff's limitations, Dr. Wood utilized California workers' compensation terminology, in which a disability precluding heavy lifting and repeated bending and stooping "contemplates the individual has lost approximately 50% of pre-injury capacity for lifting, bending and stooping." Schedule for Rating Permanent Disabilities ("Schedule"), Spine and Torso Guidelines, (Labor Code of California).

4

1 complaints of pain over the left thigh region[,]" A.R. 139;
2 nevertheless, Dr. Wood determined plaintiff should not return to his
3 prior work, but was a qualified injured worker for vocational
4 rehabilitation purposes.  A.R. 140.  Dr. Wood also noted plaintiff was
5 utilizing a cane, although there was no need for him to do so.  Id.

7 On September 25 and November 18, 1996, nontreating, nonexamining
8 physicians opined plaintiff can occasionally lift and/or carry up to
9 20 pounds, climb, balance, stoop, kneel, crouch, or crawl, and
10 frequently lift and/or carry up to 10 pounds.  A.R. 62-69, 70-77, 338-
11 53.

13 On January 27, 1997, Christopher H. Fleming, M.D., concluded
14 plaintiff was permanent and stationary when released by Dr. Wood, and
15 he should be limited to no heavy lifting, repetitive bending or
16 stooping, or prolonged walking.  A.R. 184-85.  On June 4, 1999, Dr.
17 Fleming reevaluated plaintiff and again concluded plaintiff had been
18 permanent and stationary since released by Dr. Wood.  A.R. 194-208.
19 Dr. Fleming further concluded plaintiff's work restrictions were
20 essentially unchanged – no heavy work or prolonged standing or
21 walking.[2]  A.R. 205.

---

[2] Under the version of California's workers' compensation guidelines then in effect, a disability precluding heavy work "contemplates the individual has lost approximately 50% of pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling, and climbing or other activities involving comparable physical effort."  Schedule for Rating Permanent Disabilities, Spine and Torso Guidelines, 2-14 (Labor Code of California, April 1997).  The Schedule for Rating Permanent Disabilities has been revised, effective January 2005.

5

1    Between February 1, 1999, and May 17, 2000, plaintiff received
2 treatment from Fred Liberman, M.D., who diagnosed plaintiff with
3 lumbosacral radicular pain, and noted plaintiff was doing well and his
4 condition was controlled with Vicodin.³  A.R. 356-58, 436-39.
5 Similarly, between December 6, 2001, and January 14, 2004, plaintiff
6 received treatment from Charles D. Williams, M.D., who diagnosed
7 plaintiff with disc disease, and treated him with Vicodin.  A.R. 408-
8 35.

## DISCUSSION

### III

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick, 157 F.3d at 720; Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001).  "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not

---

³ Vicodin is used "for the relief of moderate to moderately severe pain."  The PDR Family Guide to Prescription Drugs, 723 (8th ed. 2000).

6

1 substitute its judgment for that of the [Commissioner]." <u>Reddick</u>, 157
2 F.3d at 720-21; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1075 (9th Cir.
3 2002).

5     The claimant is "disabled" for the purpose of receiving benefits
6 under the Act if he is unable to engage in any substantial gainful
7 activity due to an impairment which has lasted, or is expected to
8 last, for a continuous period of at least twelve months.  42 U.S.C. §
9 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "The claimant bears the burden
10 of establishing a prima facie case of disability." <u>Roberts v.</u>
11 <u>Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1122
12 (1996); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289 (9th Cir. 1996).

14     Regulations promulgated by the Commissioner establish a five-step
15 sequential evaluation process to be followed by the ALJ in a
16 disability case.  20 C.F.R. § 404.1520.  In the **First Step**, the ALJ
17 must determine whether the claimant is currently engaged in
18 substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, in
19 the **Second Step**, the ALJ must determine whether the claimant has a
20 severe impairment or combination of impairments significantly limiting
21 him from performing basic work activities.  20 C.F.R. § 404.1520(c).
22 If so, in the **Third Step**, the ALJ must determine whether the claimant
23 has an impairment or combination of impairments that meets or equals
24 the requirements of the Listing of Impairments, 20 C.F.R. § 404,
25 Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the **Fourth**
26 **Step**, the ALJ must determine whether the claimant has sufficient
27 residual functional capacity despite the impairment or various
28 limitations to perform his past work.  20 C.F.R. § 404.1520(f).  If

7

not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. (Step One). The ALJ then found plaintiff "has a 'severe' impairment in the musculoskeletal system" (Step Two); however, he does not have an impairment or combination of impairments that meet or equal a listed impairment. (Step Three). The ALJ next determined plaintiff can perform his past relevant work as a counselor; therefore, he is not disabled. (Step Four). Alternately, the ALJ concluded plaintiff is not disabled because he can perform a significant number of jobs in the national economy. (Step Five).

**IV**

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, the ALJ determined plaintiff has the RFC to perform light work.[4] A.R.

---

[4] Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do

8

365-67. However, plaintiff contends the ALJ's determination is not supported by substantial evidence because the ALJ erroneously found plaintiff was not a credible witness and improperly assessed the opinions of plaintiff's treating physicians.[5] There is no merit to plaintiff's contentions.

### A. Credibility:

The plaintiff testified at the administrative hearing that since he injured his back in a motor vehicle accident, he continues to have back pain radiating into his left leg and left leg numbness and tingling, A.R. 383-84, and his back surgery did not improve his condition. A.R. 384. The plaintiff further testified he can stand and/or walk for only 30 minutes before having to rest for an hour and he is unable to bend from his waist, although he can squat. A.R. 385, 387. Further, plaintiff stated even a gallon of milk is "just too much . . . to carry." A.R. 388. Finally, plaintiff testified that on his worse days, he just sits on the couch or lies on the floor. A.R. 389.

Once a claimant has presented objective evidence he suffers from

---

substantially all of these activities." 20 C.F.R. § 404.1567(b). "[T]he full range of light work requires standing or walking for up to two-thirds of the workday." Gallant v. Heckler, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984); SSR 83-10, 1983 WL 31251, *6.

[5] The plaintiff also contends the ALJ failed to follow this Court's and the Appeals Council's remand orders. However, this Court remanded Doss II "to reassess plaintiff's residual functional capacity, and his credibility, specifically addressing his use of medications and any side effects." A.R. 397. On remand, this is what the ALJ did. See A.R. 364-68.

an impairment that could cause pain or other nonexertional limitations, the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). Thus, if the ALJ finds the claimant's subjective complaints are not credible, he must make specific findings to support that conclusion. Moisa, 367 F.3d at 885; Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Morgan, 169 F.3d at 599; Moisa, 367 F.3d at 885.

Here, the ALJ found plaintiff's testimony was not credible for several reasons, including that no treating or examining physician found plaintiff is disabled, which is a proper basis for an adverse credibility finding. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1995) (substantial evidence supports finding claimant could do narrow range of medium work where no examining physician concluded claimant was totally disabled); Harper v. Sullivan, 887 F.2d 92, 96-97 (5th Cir. 1989) (substantial evidence supports ALJ's finding claimant's complaints are not credible when "[n]o physician stated that [the claimant] [i]s physically disabled").

The ALJ also found plaintiff's testimony was not credible because plaintiff's surgery was successful and plaintiff has no side effects

10

from the medications he is taking, which appears to help his condition. A.R. 365-66, 436-39. This, too, is a proper basis for an adverse credibility finding. See Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (noting lack of adverse side effects in rejecting claimant's excess pain testimony); Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996) (ALJ may properly consider "evidence suggesting that [claimant] responded well to treatment" in making negative credibility determination).

Thus, "[t]he ALJ's reasons for his credibility determination were clear and convincing, sufficiently specific, and supported by substantial evidence." Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003); Thomas v. Barnhart, 278 F.3d 949, 959 (9th Cir. 2002).

**B.  Treating Physicians' Opinions:**

The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); see also 20 C.F.R. § 404.1527(d)(2) (generally providing more weight is given to treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s). . . ."). Therefore, the ALJ must provide clear and convincing reasons for rejecting the opinion of a treating physician. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Benton v. Barnhart, 331 F.3d 1030, 1036 (9th Cir. 2003). Similarly, the ALJ "must provide 'clear and convincing' reasons for rejecting the

11

uncontradicted opinion of an examining physician." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Edlund, 253 F.3d at 1158-59.

Here, plaintiff's treating physician, Dr. Wood, opined plaintiff should be limited to no heavy lifting, repeated bending and stooping, and prolonged walking, A.R. 139-40, while examining physician Dr. Fleming concurred, stating plaintiff should perform no heavy lifting, repetitive bending and stooping, and prolonged standing and walking. A.R. 184-85, 205. An individual who cannot do prolonged standing and walking is unable to perform most, if not all, light work. Gallant, 753 F.2d at 1454 n.1; S.S.R. 83-12, 1983 WL 31253, *4 (S.S.A.).[6] Therefore, the opinions of Drs. Wood and Fleming are inconsistent with the ALJ's determination that plaintiff retains the RFC to perform light work, and the ALJ committed legal error by not providing reasons for implicitly rejecting these physicians' opinions. Smolen, 80 F.3d at 1286; Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [this Court] credit[s] that opinion 'as a matter of law.'" Lester, 81 F.3d at 834 (citations omitted); Benecke v. Barnhart, 379 F.3d 587, 594

---

[6] Social Security Rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations. Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996); Quang Van Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989). Although Social Security Rulings do not have the force of law, Chavez, 103 F.3d at 851; Quang Van Han, 882 F.2d at 1457, once published, they are binding upon ALJs and the Commissioner. Holohan, 246 F.3d at 1202-03 n.1; Gatliff v. Comm'r of the Soc. Sec. Admin., 172 F.3d 690, 692 n.2 (9th Cir. 1999).

(9th Cir. 2004). As such, the ALJ's Step Four determination that plaintiff retains the RFC to perform his past relevant work as a counselor, which the ALJ found to be light work, A.R. 366, is not supported by substantial evidence. Nevertheless, given the ALJ's alternate Step Five determination, any Step Four error is harmless. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."); Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (harmless error rule applies to Social Security disability determinations).

V

At Step Five, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). To meet this burden, "[t]he Commissioner must 'identify specific jobs existing in substantial numbers in the national economy that [plaintiff] can perform despite [his] identified limitations.'" Meanel, 172 F.3d at 1114 (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). There are two ways for the Commissioner to meet this burden: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[7] Tackett v. Apfel, 180 F.3d 1094,

---

[7] The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants. Each rule defines a vocational profile and determines whether sufficient work exists in the national economy. These rules represent the [Commissioner's]

1099 (9th Cir. 1999); Osenbrock, 240 F.3d at 1162.  However, the Commissioner cannot rely on the Grids when the claimant suffers from nonexertional limitations; rather, he must rely on the testimony of a vocational expert.  Thomas, 278 F.3d at 960; Osenbrock, 240 F.3d at 1162.

Hypothetical questions posed to a vocational expert must consider all of the claimant's limitations, Thomas, 278 F.3d at 956; Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001), and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record."  Tackett, 180 F.3d at 1101.  "If a vocational expert's hypothetical does not reflect all of the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'"  Matthews, 10 F.3d at 681 (quoting Delorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991)); Lewis, 236 F.3d at 517.

Here, the ALJ asked vocational expert Joseph Mooney ("the VE") the following hypothetical question:

[ALJ]: I'd like you to consider a person of the claimant's vocational background, his age, education and work experience and consider an assessment that was made by a Dr. Fleming . . .

---

determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity."  Chavez, 103 F.3d at 851 (citations omitted).

14

|   |   |   |
|---|---|---|
| 1 |  | [who] says . . . that no heavy lifting, repetitive |
| 2 |  | bending or stooping and no prolonged standing or |
| 3 |  | walking would be appropriate. . . . Would any of |
| 4 |  | the skills that were involved in [claimant's past |
| 5 |  | relevant work as a counselor] and acquired through |
| 6 |  | his experience and education be transferable to |
| 7 |  | work at the sedentary level? |
| 8 | [VE]: | I would say yes, there would be transferable |
| 9 |  | [skills].  For example, they'd [sic] be |
| 10 |  | residential advisors, which is a form of |
| 11 |  | counseling. . . .  [T]here'd be certain types of |
| 12 |  | counselor positions where you're recording |
| 13 |  | histories rather than steps of interaction with |
| 14 |  | the inmate or the patient.  And in effect who we |
| 15 |  | would call an interviewer in a correctional center |
| 16 |  | or related type of facility.  And these are both |
| 17 |  | **sedentary** occupations.[8]  There would also be |
| 18 |  | various types of security guards, which are akin |
| 19 |  | to being information specialist[s], where you |
| 20 |  | simply are given [sic] instructions, handing out |

---

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).  "'[T]o be physically able to work the *full range* of sedentary jobs, the worker must be able to sit through most or all of an eight hour day.'"  Aukland v. Massanari, 257 F.3d 1033, 1036 (9th Cir. 2001) (quoting Tackett, 180 F.3d at 1103).

15

1         materials and requires some degree of clerical
2         perception.

4 A.R. 391-92 (emphasis and footnote added).

6     Based on the VE's testimony, the ALJ concluded that even if plaintiff could not perform his past relevant work, he retains the RFC to perform a significant range of sedentary work, which exists in significant numbers in the national economy.[9] A.R. 366-67. However, plaintiff contends the ALJ's decision is not supported by substantial evidence because the hypothetical question to the VE did not consider plaintiff's testimony regarding his pain and limitations. There is no merit to this contention since the Court has found the ALJ's negative credibility determination is supported by substantial evidence, as discussed above. See Thomas, 278 F.3d at 959 (ALJ need not include claimant's use of cane or wheelchair in hypothetical to vocational expert where no medical evidence supports these devices and ALJ properly found claimant is not credible); Rollins v. Massanari, 261

---

[9] As noted above, the opinions of Drs. Wood and Fleming were written to evaluate plaintiff's disability for California workers' compensation purposes, which uses different terminology than used in evaluating the disability of a Social Security claimant. Desrosiers v. Sec. of Health & Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); Payan v. Chater, 959 F. Supp. 1197, 1202-03 (C.D. Cal. 1996). In analyzing medical opinions utilizing workers' compensation terminology, "the ALJ is entitled to draw inferences 'logically flowing from the evidence.'" Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (quoting Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)); Payan, 959 F. Supp. at 1203. Here, the ALJ could reasonably infer from the opinions of Drs. Wood and Fleming that plaintiff retains the RFC to perform sedentary work, as plaintiff himself recognizes. See Joint Stip. at 49:18-21.

F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations he found to exist, and because his findings are supported by substantial evidence, the ALJ did not err in omitting the other limitations that [plaintiff] had claimed, but had failed to prove."). Thus, the VE's testimony provides substantial evidence to support the ALJ's Step Five determination that plaintiff can perform a significant number of jobs in the national economy.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:   August 10, 2005              /s/ Rosalyn M. Chapman
                                       ROSALYN M. CHAPMAN
                                  UNITED STATES MAGISTRATE JUDGE

R&R-MDO\04-5321.mdo
8/10/05

17